## COMMONWEALTH *vs.* PEDRO PAGAN.

Suffolk. September 6, 2005. - November 18, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Moot Question. Bail. Statute,* Construction. *Judge. Practice, Criminal,* Mittimus.

This court concluded that the bail revocation provisions of G. L. c. 276, § 58, third par., should be applied to the particular facts of each case, and when none of the charges against a criminal defendant has been dismissed or has resulted in acquittal, and where no manifest injustice exists, a District Court judge may not vacate a bail revocation order entered by another judge. [317-322] CORDY, J., dissenting.

This court concluded that once a bail revocation order enters, it is valid for a period of sixty days; and that, by mittimus returnable on the sixtieth day, a criminal defendant must be brought back to the court with jurisdiction over the charges to which the bail revocation order relates for a new bail hearing on them. [322-324]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 24, 2003.

The case was reported by *Cowin,* J.

*Dean A. Mazzone,* Assistant District Attorney, for the Commonwealth.

*Dana Alan Curhan (Brad Bennion* with him) for the defendant.

*Murray A. Kohn,* Committee for Public Counsel Services, & *Lee J. Gartenberg,* for Committee for Public Counsel Services & another, amici curiae, submitted a brief.

GREANEY, J. This case, here on a reservation and report by a single justice on the Commonwealth's petition under G. L. c. 211, § 3, seeks direction on the application of the bail revocation provisions in G. L. c. 276, § 58, third par., which authorize the revocation of bail on a pending charge or charges when a defendant is charged with committing a new offense while on release. Similar questions concerning the statute's application

are raised in two related cases, *Commonwealth* v. *Cargill, post* 329 (2005), and *Commonwealth* v. *Hall, post* 1016 (2005). We shall clarify the statute's application on the particular facts of each case, concluding generally that, when none of the charges against the defendant has been dismissed or has resulted in acquittal, and where no manifest injustice exists, a District Court judge may not, under G. L. c. 276, § 58, third par., vacate a bail revocation order. We also conclude that once a bail revocation order enters, it is valid for a period of sixty days, and that, by mittimus returnable on the sixtieth day, the defendant shall be brought back to the court with jurisdiction over the charges to which the bail revocation order relates (the original pending charges) for a new bail hearing on those charges.

The background of the case is as follows. On June 4, 2002, a grand jury in Suffolk County returned indictments charging the defendant with breaking and entering in the nighttime, possession of a burglarious instrument, possession of a firearm without a firearms identification card, possession of a firearm without a license, and resisting arrest. On June 25, 2002, the defendant was arraigned in the Superior Court. A Superior Court judge set bail at $1,000, which the defendant posted, and the defendant was advised of the potential for bail revocation under G. L. c. 276, § 58, third par., if he were charged with committing a subsequent offense during the period of his release. After further proceedings, on September 26, 2003, the parties agreed to continue the case to the week of December 8, 2003, for trial.

On November 26, 2003, the defendant was arrested and arraigned in the Dorchester Division of the District Court Department on charges of receiving stolen property and breaking and entering a motor vehicle. In connection with these charges, bail was set at $500 cash, of which the defendant posted $450. The judge then allowed the Commonwealth's motion to revoke the defendant's bail that had been set in connection with the Superior Court indictments. The notation on the docket reflects that the motion was "allowed to 12-8-03," i.e., to the date of the defendant's scheduled trial on the Superior Court indictments.

The defendant's trial in Superior Court did not proceed on the scheduled date due to the absence of defense counsel. On

December 8, 2003, after a hearing, a different judge (of the District Court) vacated the order revoking the defendant's bail on the Superior Court indictments and reinstated the bail originally set ($1,000 cash). With respect to the District Court charges, the judge reduced the bail to $450 cash, which had already been posted.

The Commonwealth filed a notice of appeal, followed by a petition in the county court pursuant to G. L. c. 211, § 3, seeking relief from the portion of the December 8, 2003, order that vacated the revocation of the defendant's bail on the Superior Court indictments. A single justice reserved and reported the case, without decision, to the full court. Prior to her reservation and report, both the Superior Court indictments and District Court charges against the defendant were resolved.[1]

1. Because the charges against the defendant were resolved, the case is moot. See *Commesso* v. *Commonwealth*, 369 Mass. 368, 374 (1975). We nonetheless address the issues raised because they "are fully briefed and raise matters of importance that are likely to arise again, but are unlikely to be capable of appellate review in the normal course before they become moot." *Delaney* v. *Commonwealth*, 415 Mass. 490, 492 (1993), quoting *Upton, petitioner*, 387 Mass. 359, 365 (1982).

2. We examine whether, under G. L. c. 276, § 58, third par., a District Court judge may vacate a bail revocation order entered by another judge. The statute "sets forth the conditions . . . for the possible revocation of bail if [a defendant] is charged with committing a subsequent offense during the period of his release," *Paquette* v. *Commonwealth*, 440 Mass. 121, 125 (2003), cert. denied, 540 U.S. 1150 (2004), reading, in relevant part, as follows:

> "[Should] any person admitted to bail pursuant to this section or section fifty-seven[2] . . . be charged with a crime during the period of his release, his bail may be

[1]On January 5, 2004, after a jury-waived trial on three of the Superior Court indictments, the defendant was found guilty on all three indictments. On June 30, 2004, the defendant entered guilty pleas to the District Court charges.

[2]We noted in *Serna* v. *Commonwealth*, 437 Mass. 1003, 1003 (2002), that G. L. c. 276, § 58, "does not address, or purport to govern, the setting of bail

revoked in accordance with this paragraph and the court shall enter in writing on the court docket that the person was so informed and the docket shall constitute prima facie evidence that the person was so informed.[3] If a person is on release pending the adjudication of a prior charge, and the court before which the person is charged with committing a subsequent offense after a hearing at which the person shall have the right to be represented by counsel, finds probable cause to believe that the person has committed a crime during said period of release, the court shall then determine, in the exercise of its discretion, whether the release of said person will seriously endanger any person or the community. In making said determination, the court shall consider [several factors[4]]. If the court determines that the release of said person will seriously endanger any person or the community and that the detention of the person is necessary to reasonably assure the safety of any person or the community, *the court may revoke bail on the prior charge and may order said person held without bail pending the adjudication of said prior charge, for a period not to exceed sixty days.* The hearing shall be held upon the person's first appearance before the court before which the person is charged with committing

---

in the Superior Court," but rather "applies only to bail determinations by a 'justice or a clerk or assistant clerk of the *district court*, a bail commissioner or mastery in chancery [judicial officials],' " and that G. L. c. 276, § 57, is not so limited and "applies to [bail determinations by] a 'justice of the supreme judicial court or superior court, a clerk of courts or the clerk of the superior court for criminal business in the county of Suffolk, a standing or special commissioner appointed by either of said courts or, in the county of Suffolk, by the sheriff of said county with the approval of the superior court, a justice or clerk of a district court, [or] a master in chancery [judicial officials]' " (emphasis added).

[3]On the standard criminal docket form in the District Court, a box must be marked to indicate that a defendant was "Arraigned and advised" of the "Potential of bail revocation (276, § 58)." In the Superior Court, an entry such as "bail warning read" is entered on the docket.

[4]The enumerated factors are "the gravity, nature and circumstances of the offenses charged, the person's record of convictions, if any, and whether said charges or convictions are for offenses involving the use or threat of physical force or violence against any person, whether the person is on probation, parole or other release pending completion of sentence for any conviction, whether he is on release pending sentence or appeal for any conviction, the person's mental condition, and any illegal drug distribution or present drug dependency." G. L. c. 276, § 58, third par.

an offense while on release pending adjudication of a prior charge, unless that person, or the attorney for the commonwealth, seeks and the court allows, a continuance because a witness or document is not immediately available. . . . *Said order* shall state in writing the reasons therefor and *shall be reviewed by the court upon the acquittal of the person, or the dismissal of, any of the cases involved. A person so held shall be brought to trial as soon as reasonably possible.*" (Emphases added.)

G. L. c. 276, § 58, third par.

We apply settled principles of statutory construction. When the statute's language is plain and unambiguous, we afford it "its ordinary meaning." *Commonwealth* v. *Brown,* 431 Mass. 772, 775 (2000). "Where the draftsmanship of a statute is faulty or lacks precision, it is our duty to give the statute a reasonable construction." *Capone* v. *Zoning Bd. of Appeals of Fitchburg,* 389 Mass. 617, 622 (1983), quoting *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n,* 385 Mass. 70, 79-80 (1982). We "must construe the statute 'in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Capone* v. *Zoning Bd. of Appeals of Fitchburg, supra* at 622-623, quoting *Industrial Fin. Corp.* v. *State Tax Comm'n,* 367 Mass. 360, 364 (1975).

"The essential purpose of bail is to secure the presence of a defendant at trial to ensure that, if the defendant is guilty, justice will be served." *Querubin* v. *Commonwealth,* 440 Mass. 108, 113 (2003), and cases cited. We have previously recounted the history of bail and bail reform in some detail. See *Commonwealth* v. *Ray,* 435 Mass. 249, 252-257 (2001); *Commonwealth* v. *Baker,* 343 Mass. 162, 165-168 (1961). Over the years, as Massachusetts became a leader in the bail reform movement, various bail statutes, including § 58, underwent numerous revisions. See *Commonwealth* v. *Ray, supra.* The principal legislative purpose of § 58 is "to protect the rights of the defendant by establishing a presumption that he or she will be admitted to bail on personal recognizance without surety and by delineating carefully the circumstances under which bail may be denied." *Delaney* v. *Commonwealth, supra* at 495.

In 1981, the Legislature enacted St. 1981, c. 802, entitled "An Act relative to bail, pretrial release and confinement." Section 2 amended G. L. c. 276, § 58, by adding a bail revocation provision. See St. 1981, c. 802, § 2. In a February 27, 1981, letter to the members of the Massachusetts Senate and House of Representatives, Governor Edward J. King indicated that he was proposing the act, in part, to "allow [a] judge to revoke bail when the court finds probable cause to believe that the defendant has violated [the] condition [that he refrain from criminal activity during the period of his release], if the court determines that the defendant's release would pose a serious danger and that his detention is necessary to reasonably assure the safety of any person or the community." 1981 House Doc. No. 6320. In rejecting a substantive due process challenge to the current version of the bail revocation provision, G. L. c. 276, § 58, third par., we explained: "Although the public may benefit indirectly from the detention of a defendant whose bail is revoked pursuant to the third paragraph of § 58 because he may be dangerous, the purpose of § 58 is not 'calculated to protect the public' from a dangerous person, *Aime* v. *Commonwealth*, [414 Mass. 667, 675 (1993)], but to assure compliance with its laws and to preserve the integrity of the judicial process by exacting obedience with its lawful orders." *Paquette* v. *Commonwealth, supra* at 129. We also noted that, based on the language in the third paragraph of § 58, "the liberty interest of a person admitted to bail is conditional; if the person violates the explicit condition of his release, then his liberty can be curtailed [and] 'the keys to continued freedom are left in the pocket of the accused.' " *Id.* at 126, quoting *Rendel* v. *Mummert*, 106 Ariz. 233, 238 (1970).

In G. L. c. 276, § 58, third par., the Legislature has made a specific, but limited, grant of authority to District Court judges (and other designated judicial officials, see note 2, *supra*) to revoke a bail order that has been entered under § 58 or § 57. Under the language of the statute, a bail revocation order may only enter "pending the adjudication of said prior charge, for a period not to exceed sixty days." As such, if adjudication of the prior charge occurs, the bail revocation order automatically terminates. The only language in the statute pertaining to any

type of review of a revocation order is limited, requiring review ("shall be reviewed") "upon the acquittal of the person, or the dismissal of, any of the cases involved." G. L. c. 276, § 58, third par. The language is clear. If one of the specified circumstances is not present, a District Court judge (or any other judicial official under § 58) may not vacate a revocation order.[5]

Our conclusion is supported by the purpose of the bail revocation provision. Permitting any District Court judge to vacate a bail revocation order would likely result in multiple motions by a defendant to vacate an order, and would encourage "judge shopping" for a more favorable determination. Such effects would directly contradict the legislative goal of assuring *compliance* with judicial orders and preserving "the integrity of the judicial process by exacting obedience with its lawful orders," *Paquette* v. *Commonwealth, supra* at 129. The practice would also offend the Legislature's objective in curtailing the conditional liberty interest of a defendant when the defendant has violated an explicit condition of release by being charged with another crime during the period of release. See *id.* at 126.[6]

We reject the defendant's contention that the judge who vacated the revocation order permissibly did so by reason of inherent authority. Certainly, a "court has inherent authority to exercise its own legitimate powers." *Jake J.* v. *Commonwealth*, 433 Mass. 70, 77 (2000). Cf. *Bradford* v. *Knights*, 427 Mass.

---

[5]The proposition stated by the dissent, that a judge has the general power to reconsider his or her decision on almost any matter, is accurate. *Post* at 325-327. That power, relied on as the foundation of the dissent's reasoning, does not exist under G. L. c. 276, § 58, third par., after a judge exercises his or her discretion to revoke bail, because as indicated above, the Legislature has, in mandatory language, categorically denied judges the authority to revisit revocation decisions in the absence of two defined circumstances, neither of which was present in this case or in the related cases.

[6]Our conclusion is consistent with the reasoning in *Delaney* v. *Commonwealth*, 415 Mass. 490 (1993). In that case, we concluded that G. L. c. 276, § 58, third par., "does not provide for review of bail revocation orders in the Superior Court." *Id.* at 497. We reasoned that "[r]eview of a bail revocation order is more in the nature of an appeal than a de novo determination [and] [h]ad the Legislature intended to provide for review of such orders in the Superior Court . . . we think it would have said so explicitly." *Id.* at 496.

748, 752 (1998). With respect to bail issues, a Superior Court judge "has the inherent authority to deny a defendant's motion for admittance to bail where bail will not reasonably assure the defendant's appearance before the court," *Querubin* v. *Commonwealth*, 440 Mass. 108, 114 (2003), citing *Commonwealth* v. *Wright*, 11 Mass. App. Ct. 276, 282 (1981); and a Juvenile Court judge has inherent power to revoke a juvenile's bail for his violation of his conditions of release, see *Jake J.* v. *Commonwealth*, *supra* at 78. These inherent powers, however, are sparingly invoked. See *Fine* v. *Commonwealth*, 312 Mass. 252, 257 (1942). There were no exceptional circumstances present here to justify the exercise of inherent power.

We take up the defendant's argument that the bail revocation order was only a temporary order that expired by its terms, by the insertion of the date of "12-8-03," and, therefore, was not vacated. As has been stated, the statute permits a person to be held without bail "for a period not to exceed sixty days," and anticipates that the defendant will be tried promptly. G. L. c. 276, § 58, third par. Nothing more definitive concerning this time frame is expressed. The statute's lack of precision and instruction, and the judge's insertion of, effectively, an expiration date on the bail revocation order in this case (that terminated the revocation order well before the end of the sixty-day period and prior to the actual trial date), generated confusion. We are obligated to give the statute "a reasonable construction." *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. 617, 622 (1983).

We conclude that a bail revocation order, once entered, shall be valid for a period of sixty days. The judge shall designate in his or her order of revocation the sixtieth day, specifically, the day of the week, the date of the month, and the year on which the sixtieth day falls, to avoid any misunderstanding.[7] Simultaneously, a mittimus shall enter, committing the defendant held without bail until the sixtieth day as designated in the order of revocation (the date in the mittimus specifying the defendant's

[7] If the sixtieth day falls on a weekend or holiday, the preceding work day shall constitute the "sixtieth" day. Cf. G. L. c. 127, § 150 (providing that prisoner whose term expires on Sunday or legal holiday shall be discharged on preceding day).

next court appearance must mirror the sixtieth day as designated in the order of revocation). The mittimus shall specify that the defendant be returned for his next appearance to the court with jurisdiction over the charges to which the bail revocation order relates (the court where the original bail had been set on the original pending charges, in this case the Superior Court) for a new bail hearing on those charges. At that time, the defendant will be afforded the opportunity to seek new bail or waive his right to his new bail hearing on that day and remain held without bail.[8]

This procedure is consistent with the statute's speedy trial objectives in its directive that once a defendant's bail is revoked, the defendant "shall be brought to trial as soon as reasonably possible," G. L. c. 276, § 58, third par. The procedure also secures the defendant's presence at trial. Self-expiring revocation orders falling within the sixty-day period would likely weaken a firm trial date and serve to invite a judge or judges to revisit the bail revocation order, action that we have already explained is not authorized. Further, because a bail revocation order extinguishes conditional liberty, once a bail revocation order enters, the bail has been revoked and no longer exists. Thus, a new bail release, if sought by a defendant, must be obtained (as opposed to automatic reinstatement of the bail that had been set prior to the revocation order). New bail must be obtained in the court having jurisdiction over the charges to which the bail revocation order relates (the court where the original bail had been set on the original pending charges) because the judge who revoked the bail might not possess the authority to set a bail on charges pending in a different court, see *Serna* v. *Commonwealth*, 437 Mass. 1003 (2002), and because the judge in the original court may take into consideration the arrest on the new charge before setting new bail. No statutory or common-law authority exists authorizing a judge to

---

[8]The clerk's office of the court entering the bail revocation order shall promptly thereafter transmit a copy of the bail revocation order and a copy of the mittimus herein referenced to the clerk's office of the court having jurisdiction over the charges to which the bail revocation order relates (the court where the original bail had been set on the original pending charges). The receiving court shall promptly enter this information on the docket and notify counsel of record.

set bail in a case not pending in the court in which he or she sits, and an order revoking bail is substantively different from an order setting bail, see *Sheriff of Suffolk County* v. *Pires*, 438 Mass. 96, 99 (2002).

Consistent with our duty to effectuate the statute's objectives, but mindful of the possibility that special circumstances may arise (albeit rarely) that justify an option different from what has been directed, we conclude that reconsideration of a bail revocation order may be sought when a defendant (or the Commonwealth) can demonstrate that a *manifest injustice* will result if a bail revocation order is not revisited. Such reconsideration must be sought from the judge who entered the bail revocation order, and any change in the original revocation must be supported by reasons in writing. To give some obvious examples, the discovery that the defendant is not the person charged in the complaints or indictments, or that he did not commit the serious crime on which revocation was predicated, would require reconsideration to prevent a manifest injustice.

In sum, we conclude that, when none of the cases against the defendant has been dismissed or has resulted in his acquittal, and where no manifest injustice exists, a District Court judge may not, under G. L. c. 276, § 58, third par., vacate a bail revocation order entered by another judge. We also conclude that once a bail revocation order enters, it shall be valid for a period of sixty days, and that on the sixtieth day, the defendant shall be returned to the court with jurisdiction over the charges to which the bail revocation order relates (the original pending charges) for a new bail hearing on those charges. Last, we deny the defendant's request for appellate counsel fees and costs.

The case is remanded to the single justice for entry of a judgment consistent with this opinion.

*So ordered.*

CORDY, J. (dissenting in part). General Laws c. 276, § 58, authorizes District Court judges to revoke bail previously set in other courts or by other judges in the same court, when a defendant so released is charged with a new offense thereby

violating the conditions of release. This authority may be exercised only if the District Court judge finds "probable cause to believe" that the newly charged crime has been committed, that the defendant's further release will "seriously endanger any person or the community," and that the defendant's detention is necessary to assure the safety of those constituencies. In determining whether the person poses such a danger and the necessity of detention, the judge is required to consider a number of enumerated factors, including the nature and circumstances of the offense, the defendant's record of convictions, the status of his release, and any present mental condition or drug dependency. The decision to revoke, however, is explicitly made discretionary, not mandatory, regardless of the judge's findings. The statute repeatedly uses the word "may" rather than "shall."[1] Indeed, the only mandatory language in the statute requires the "court" (presumably the District Court to which § 58 is directed) to review its revocation order "upon the acquittal of the person, or the dismissal of, any of the cases involved."

Interpreting this language the court concludes that once a District Court judge enters an order revoking a defendant's bail it must remain in effect until the underlying offense is disposed of, up to sixty days (the maximum time permitted by § 58). The court further concludes that the order cannot be revisited or reconsidered unless there is a dismissal or acquittal of the new charges, or the defendant can demonstrate to the judge who revoked the bail that a "manifest injustice" will result if the order is not vacated. In reaching the latter of these two conclusions the court rejects the well-settled principle that a judge can always reconsider a prior order or decision during the pendency of the case. Because I see no basis in the statutory language for departing from this principle, I dissent from this part of the opinion.

[1] In contrast, under G. L. c. 276, § 58B, "[a] person who has been released after a hearing pursuant to § 58A [the dangerousness statute] and who has violated a condition of his release, *shall* be subject to a revocation of release and an order of detention" (emphasis added). As in G. L. c. 276, § 58, third par., the court must make the same probable cause and dangerousness determinations under § 58B; however, if those findings are made, the "judicial officer shall enter an order of revocation and detention."

"A judge's power to reconsider his own decisions during the pendency of a case is firmly rooted in the common law . . . ." *Commonwealth* v. *Haskell*, 438 Mass. 790, 792 (2003). See *Commonwealth* v. *Gonsalves*, 437 Mass. 1022, 1022 (2002) ("It is settled that a judge has considerable discretion to reconsider prior orders . . ."). "Judges are not condemned to abstain from entertaining second thoughts that may be better ones." *Commonwealth* v. *Downs*, 31 Mass. App. Ct. 467, 469 (1991). "[I]t is more important for a judge to do justice according to his oath and his conscience than to avoid adverse criticism. If further reflection convinces him that he has erred in an announced decision, he ought to correct his error while he still has the power." *Sheriff* v. *Gillow*, 320 Mass. 46, 49 (1946). See *Peterson* v. *Hopson*, 306 Mass. 597, 601-602 (1940), and cases cited.

It seems particularly appropriate that this firmly rooted power be available to correct orders that deprive persons of their liberty — orders that are themselves discretionary and based on the weighing of a number of factors that are considered almost immediately following the arrest of the defendant on new charges. Some of those factors may well change significantly once more information becomes available. Information that must be relied on instantly may prove not so reliable a few days or weeks later. This may be the result of errors in the record (such as inaccuracies in the person's record of convictions or release status), the availability of more comprehensive information (such as the circumstances of the offense), or the result of changed personal circumstances (such as an apparent mental condition or drug dependency). To bar judges from reconsidering such important decisions, in light of more, or more accurate, information bearing on the appropriateness of their exercise of discretion is quite extraordinary. It discounts in a categorical way the vast array of circumstances (and changing circumstances) that judges in our busy District Court face on a daily basis. I would not reach this result unless the statute clearly required it. Nothing in its wording would lead me to that conclusion.

The court appears to reach this result by holding that § 58 gives very limited jurisdiction to District Court judges, and that once such a judge has acted to revoke a prior bail, that jurisdic-

tion is swept away. That is hardly apparent. First, there are many instances where the new (or triggering) offense will be in the very same court as the prior offense, and jurisdiction is not an issue. Second, even if the prior bail was set in another court (such as the Superior Court) the statute specifically requires that the District Court review the revocation order if the new charges are dismissed or there is an acquittal. Surely this suggests that some form of jurisdiction over the revocation order remains in the court considering the new charges — at least until the new case is disposed of or the revocation order expires, whichever occurs first. Indeed the import of the court's opinion itself is consistent with this conclusion: how otherwise could a District Court judge reconsider a revocation order based on a plea of "manifest injustice" if he had no jurisdiction to do so?

In any event, I conclude that the District Court judge who revoked the bail has the authority to reconsider that order and to vacate it "[i]f further reflection convinces him that he has erred."[2] *Sheriff* v. *Gillow, supra.* While I do not contend that judges are required to reconsider their orders, or that they should lightly undo what they have done, they have the authority to do so. The presence of "manifest injustice" has never been a requirement for the exercise of this common-law authority.

I would also conclude that other judges before whom the new case may come also have the authority to vacate a revocation order if the judge who entered it is unavailable. While a judge should hesitate before undoing his own actions, "[s]till more should he hesitate to undo the work of another judge." *Peterson* v. *Hopson, supra* at 603. This principle works well in practice and I see no reason (surely nothing in the statute) that requires it to be abandoned.

In sum, I would hold that a District Court judge always retains the authority to review and vacate a bail revocation order he entered and may (albeit rarely) determine that it is necessary and appropriate to do the same with respect to the revocation

---

[2]Vacating an order revoking bail has the effect of reinstating the prior bail. I agree that § 58 does not authorize District Court judges to set a different bail or new conditions of release on a prior charge pending in another court, and that when a revocation order expires after sixty days, a new bail hearing must be held in the court with jurisdiction over that offense.

order of another District Court judge if he or she is unavailable to rule on the matter and prompt action is required.